## GREAT SOUTHERN LIFE INS. CO. v. HUKILL.

### No. 14206.

Court of Civil Appeals of Texas.
Fort Worth.

April 11, 1941.

Rehearing Denied May 30, 1941.

Vinson, Elkins, Weems & Francis and Fred R. Switzer, all of Houston, for appellant.

Martin, Moore & Brewster and Harris Brewster, all of Fort Worth, for appellee.

BROWN, Justice.

The policy of insurance that brought about this litigation is a group insurance contract.

The insurer issued the contract to the Fort Worth Police Benevolent Association, under which any and all members of the police force of the City of Fort Worth, who may make application thereunder, may be insured and to whom individual certificates are issued under the master policy.

E. N. Hukill, a member of such police force, took out a policy on his life in the sum of $2,000, and named his wife as beneficiary, but incorrectly spelled her name Joe Ann, instead of Joan.

The contract having provided for a change of beneficiary, in the manner prescribed, Hukill executed the proper written request to change the beneficiary to his son, Obie Hukill, and at the same time he made an affidavit that the certificate originally issued to him was lost. A new certificate was then issued to him, naming his said son as beneficiary.

The insured died and proof of death having been made, within a few days after receipt thereof, the insurer issued and delivered to "The Fort Worth Police Benevolent Association, Trustee", its check in the sum of $2,000, and such check was endorsed by said Trustee to Joan Hukill, wife of the insured.

Obie Hukill, the surviving son of E. N. Hukill, brought suit against the insurer, Great Southern Life Insurance Company, alleging the issuance of the policy and the certificate to his father, and the change of beneficiary, naming him, the death of his father, and alleging demand upon the insurer to pay him the proceeds of the policy, more than 30 days before suit was filed (on Oct. 10th, 1939), and prayed for the proceeds, attorney's fees and statutory penalty.

On May 27th, 1940, the plaintiff filed his first amended original petition, in which he makes all of the usual allegations covering such a situation as is disclosed above, and alleged further: "Plaintiff says that no proper change of beneficiary as provided by said policy of insurance, said certificate and the laws of this state ever was executed by the said Euyard N. Hukill authorizing the defendant herein to change the beneficiary in said policy."

The allegations just quoted must have been in reply to allegations found in the first amended original answer filed by the insurer on March 13th, 1940, wherein the insurer averred that on or about September 25th, 1935, the insured made an affidavit as to the loss or destruction of his certificate and a request for a new certificate and at the same time executed a written request to change the beneficiary naming his said wife as such, and that a duplicate policy was issued as requested.

The amended answer also set up the several provisions of the policy and specially alleged that the insurer paid the proceeds of the policy to the trustee named, and, at the time such payment was made, that it had no notice or claim that anyone was claiming the proceeds of the policy except Mrs. Joan Hukill.

Testimony touching the actual execution of an instrument in writing by the insured requesting a change of beneficiary to that of his said wife was adduced, but the instrument was not found and in evidence. There was no testimony that no such instrument was executed.

The cause was tried to a jury and a verdict on special issues was returned finding: (1) That deceased did not execute an instrument in writing expressing a desire to change the beneficiary from his son to that of his wife, (2) fixing the attorney's fee at $300, (3) that when the insurer issued the check to said association as trustee, it had notice that Obie Hukill was making claim to the proceeds of the policy.

The insurer's request for a peremptory instruction and its objections to the charge were overruled, and on plaintiff's motion judgment was rendered for him for the amount of the policy, 12 per cent damages and the attorney's fee found by the jury.

The insurer has appealed, and presents several assignments of error, but the view we take of the case does not necessitate a discussion of all of them.

The master policy is issued to said Association, which is designated as "Employer", and the contract provides that in the event of the death of the insured, "the Company will pay the sum insured to the Employer in trust for the beneficiary of such deceased employee."

The duplicate copy of the certificate that was first issued to the insured was introduced in evidence. It originally named the deceased's wife as beneficiary, and the following notations appear on the contract under the "Register of Change of Beneficiary":

"9–2–33 (Beneficiary) Obie Hukill (son).
"9–27–35 " Joan Hukill (wife)."

After each such notation, or record, there appears, under the words "Indorsed by", the name of E. A. Kiker, who is and was an officer of the insurer, with authority to perform the act done.

The contract provides that the insured may, by written request to the company, change the beneficiary and that no change shall take effect until it has been indorsed on the certificate; and the certificate bears the following: "No change, designation, or declaration shall take effect until indorsed on this certificate by the company at the home office", at the very top of that portion of the certificate which provides the place for designating a change of beneficiary. Thus it affirmatively appears that in order to make a change as to the beneficiary the insured must make application therefor in writing and send the certificate to the office of the insurer where the change is indorsed thereon and the certificate returned to the insured.

While no written request was introduced in evidence, the witness C. T. Stamp, secretary-treasurer of the Benevolent Association, testified that he received the duplicate of the original certificate from the insurer on which the change of bene-

ficiary had been indorsed on September 27th 1935, showing that Joan Hukill, the insured's wife, was named as beneficiary, and that when he received such instrument he made a record, on a card in his office (kept for such purpose) noting such change of beneficiary, and delivered the certificate to the insured.

C. H. Sinclair, local agent and representative of the insurer, testified that in 1935 the insured asked for a change of beneficiary and a form of affidavit for loss of the policy; that the insured signed and delivered to the witness the instrument requesting that the beneficiary be changed to his wife; that at the same time he signed the affidavit of loss of the policy, but witness not being a notary, he told the insured to have the affidavit "acknowledged" and to bring it to the office of the witness; that the insured signed the affidavit in his presence and same was witnessed by a Mrs. Nora Preacher, whose name appears on the affidavit; that witness took the instrument requesting the change of beneficiary to the office of witness and kept it until the insured brought him the said affidavit which shows to have been sworn to by the insured before H. B. McMahon, a notary public in and for Tarrant County, Texas, on September 25th, 1935; that witness then had his secretary, or stenographer, send both of said above mentioned instruments to the insurer.

H. B. McMahon, the said notary public, testified that he was a member of the police department of the City of Fort Worth, and that he swore the insured to the said affidavit and gave it back to the insured.

Mrs. Joan Hukill testified that when Mr. Sinclair came out to the home of the witness she saw the insured sign the written request for the change of beneficiary, which named her as such, and that afterwards she received the policy of insurance from the insurer—the one introduced in evidence showing Joan Hukill as beneficiary.

While E. A. Kiker was on the witness stand, there was identified by him and introduced in evidence "the premium record and history card", which was kept in the office of the insurer and which card shows the payments of premiums and the beneficiary. This card discloses that the original beneficiary was the wife, who was then designated as Joe Ann Hukill; that this memorandum was canceled with a typewriter, and "Obie Hukill 9–2–33" was written in, and that such memorandum was also canceled with a typewriter and "Joan Hukill 9–27–35" written in.

E. A. Kiker, secretary of the insurer, testified that a request for change of beneficiary came to his office in 1935, naming Mrs. Hukill as beneficiary, that when such instruments come to the office, the clerk who has charge of such matters places the papers on his desk for his signature, showing the change of beneficiary on the policy, and that he examines the request for the change of beneficiary to see whether or not it is in proper form before he indorses the policy and makes the requested change.

No witness testified that the insured did not make a written application for a change of beneficiary in September, 1935, designating Joan Hukill as beneficiary.

A brother of Obie Hukill, Oscar Hukill, testified that his father did not sign the affidavit of loss of the policy which is dated September 25th, 1935, and made before the notary H. B. McMahon. He based his testimony on the statement that the signature is not made as his father customarily signed his name and also that the handwriting does not look like his father's.

Such testimony and the fact that the instrument requesting a change of beneficiary was not produced in evidence— the testimony being that after diligent search it could not be found—is all that the jury had before it even tending to show that the insured did not change the beneficiary, in September, 1935, to his wife, Joan Hukill.

At this juncture it may be well to call attention to the fact that the original certificate names the wife "Joe Ann." This was evidently a clerical error, and must have been caused by the person who sent in the application for Mr. Hukill's insurance, in the very beginning of the negotiations.

This thought occurs to us: How did the insurer know that the wife's name is "Joan Hukill" and not "Joe Ann Hukill", when the last change of beneficiary was made by Kiker, the secretary of the insurer, in 1935, unless there was before such officer a written request for such change correctly spelling the wife's name? We believe that, under the circumstances, the question answers itself.

■ This fact, along with other corroborating. facts and circumstances, ren-

ders the testimony of the several witnesses to the execution of the request for a change of beneficiary unassailable, in our opinion, in view of the total absence of any testimony that no such instrument was signed by the insured.

The finding by the jury that the insured did not request that the beneficiary be changed to Joan Hukill is wholly without evidence to support it, and the undisputed evidence is that such request was made.

 For the reasons noted, the judgment must be reversed and rendered, but there is yet another reason why it is our duty to render judgment for appellant.

We have shown above that the master policy specifically provides for payment of the proceeds of the policy to Fort Worth Police Benevolent Association as trustee for the beneficiary, and the certificate issued to the insured contains a similar provision in these words: "Any claim for death under this contract shall be paid to the association as trustee for the beneficiary designated by the member."

The insurer literally complied with these provisions of the contract.

It had before it records designating Mrs. Joan Hukill as beneficiary and it had no notice that any other person was claiming to be the beneficiary.

It executed its check, four days after the insured died, payable to "Fort Worth Police Benevolent Association, Trustee", in the full amount of the policy—$2,000.

The proof shows that after this check was received by the association, Mr. Sinclair, local agent and representative of the insurer, went to the office of the association and, learning that the check had arrived from the insurer, offered to deliver it to Mrs. Hukill, and the secretary, Mr. Stamps, consented to this arrangement and then and there endorsed the check so as to make it payable to the order of Joan Hukill and Sinclair delivered it to her.

It is fundamentally sound that, when one who deals with a trustee pays funds to such trustee which are properly payable to him, such an one is not obligated to see that the funds are properly dealt with by the trustee and put to a proper use for the cestui que trust, in the absence of notice that the trustee intends to wrongfully use, or apply, the funds.

In addition to the well established rule above stated, the Legislature of Texas enacted Article 7425b. (Vernon's Tex.Civ. St.) which provides: "Whenever one shall actually and in good faith pay a sum of money to a trustee, which the trustee is authorized to receive, he shall not be responsible for the proper application of the money, according to the trust; and any right or title derived from the trustee in consideration of such payment shall not be impeached or called in question in consequence of a misapplication by the trustee of the money so paid."

We understand that the so-called Uniform Fiduciary Act adopted by many states is substantially like the Texas Statute above quoted.

Bogert on Trusts and Trustees, vol. 4, § 901, p. 2611, in discussing such Fiduciary Act, in connection with such dealings with a trustee as we have before us in the instant suit, says: "In none of these cases, under the modern law, is the payor or deliverer put on inquiry as to whether the trustee intends to misapply the property paid or delivered, or does actually dispose of it in breach of trust after it is received. The payment or delivery may be made on the assumption that the property handed over to the trustee will be used by him for trust purposes."

There is no evidence of probative force, in this record, even tending to show that the insurer knew that the trustee association intended to deliver the check, or the proceeds thereof, to any person other than the one to whom it rightfully belonged.

The contention of appellee that the fact of the issuance of a second certificate and a change of beneficiary to that of the son is sufficient notice to the insurer of the proper beneficiary is not tenable, when the fact appears of record that, when the check was issued, the insurer had before it records showing that the beneficiary had been again changed, making the wife such.

 We do not believe that the language used in the contract is susceptible of the construction that the duty devolved upon the insurer to issue the check to the trustee, making it payable to such trustee for the use and benefit of the beneficiary, naming the rightful beneficiary. This, to us, would be an unwarranted construction of the contract.

For the reasons noted, the judgment is reversed and here rendered for appellant.